GEMINI CAPITAL GROUP, LLC,
Plaintiff-Respondent,

v.

Leroy JONES and Roger Jones,
Defendants-Appellants.

Court of Appeals

*No. 2016AP2123. Submitted on briefs September 5, 2017.
—Decided October 17, 2017.*

2017 WI App 77

(Also reported in 904 N.W.2d 131.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Matthew C. Lein* of *Lein Law Offices*, Hayward.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Bryan K. Nowicki, Joshua D. Taggatz* and *Monica A. Mark* of *Reinhart Boerner Van Deuren S.C.*, Madison, and *Kersten Holzhueter* of *Spencer Fane LLP, Kansas City, Missouri.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. Leroy and Roger Jones (collectively, Jones) appeal an order granting summary judgment to Gemini Capital Group, LLC. Gemini filed the instant lawsuit in attempt to recover a deficiency judgment against Jones. Jones argues the circuit court improperly granted summary judgment in Gemini's favor because: (1) Gemini failed to establish its ownership of the debt; (2) Gemini failed to prove the collateral at issue was sold in a commercially reasonable manner, as required by WIS. STAT. § 425.209(1) (2015–16);[1] and (3) a material issue of fact exists as to whether Gemini's complaint was timely filed, pursuant to the applicable statute of limitations.

¶ 2. We conclude Gemini failed to make a prima facie case for summary judgment with respect to the first two issues raised by Jones, and a genuine issue of material fact exists regarding the third issue. We therefore reverse the order granting summary judgment to Gemini and remand for further proceedings.

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

## BACKGROUND

¶ 3. In July 2007, Jones purchased a 2004 Ford Ranger from Timber Ford Mercury of Hayward, Inc. To finance the purchase, Jones entered into a "Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement" with Timber Ford Mercury. It is undisputed that Jones made some of the payments due under this agreement, but he eventually stopped making payments. In March 2009, HSBC Auto Finance, Inc., filed a small claims lawsuit against Jones in Sawyer County, seeking to repossess the vehicle. That lawsuit resulted in a default judgment against Jones, and the vehicle was subsequently repossessed and sold.

¶ 4. On March 23, 2015, Gemini filed the present lawsuit in attempt to recover a deficiency judgment against Jones. In its complaint, Gemini alleged it had "purchased the deficiency amount owed on the [Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement]" and was "the successor-in-interest for the HSBC Serv Auto Loan."

¶ 5. Gemini ultimately moved for summary judgment. As relevant to this appeal, Gemini relied on an affidavit of Roger Neustadt to establish its ownership of Jones' debt. In his affidavit, Neustadt averred:

> I am a custodian of records for [Gemini] and the facts recited herein are based upon my personal knowledge of the electronic business records of the account in question, which are part of [Gemini's] regular business records. These records are kept by [Gemini] in the regular course of business, and it was the regular course of business of [Gemini] or its predecessor in interest for an employee or representative of [Gemini] or its predecessor in interest, with knowledge of the

act or event recorded, to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time or reasonably soon thereafter.

¶ 6. Neustadt averred that Jones entered into a Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement with Timber Ford Mercury on or around July 12, 2007, and, "[a]s indicated on the contract," Timber Ford Mercury assigned Jones' debt to "HSBC." Neustadt further averred that, on or about November 9, 2009, HSBC "transferred the contract and the rights therein to Santander Consumer USA Inc." Neustadt next averred that, on or about September 7, 2012, Santander "sold the contract and the rights therein to Main Street Acquisition Corp." Finally, Neustadt averred that, on or about July 16, 2014, Main Street "sold the contract and the rights therein" to Gemini. Neustadt averred Gemini is "the current holder and owner of [Jones'] contract and the rights therein." Various documents were attached to Neustadt's affidavit in support of these averments.

¶ 7. Jones filed a brief and affidavits in opposition to Gemini's summary judgment motion, but he did not submit any evidence disputing Gemini's claim that it was the current owner of Jones' debt. Instead, Jones argued the evidence Gemini submitted was insufficient to make a prima facie showing regarding Gemini's ownership.

¶ 8. The circuit court granted summary judgment in Gemini's favor. Addressing Jones' argument that Gemini had failed to establish its ownership of the debt, the court stated Gemini had presented a "logical . . . step by step . . . from the point the vehicle was purchased, was financed by HSBC all the way up to Gemini." The court observed that, while Jones was

619

critical of Neustadt's affidavit, he had "not necessarily challenged the affidavit with any counter affidavits."

¶ 9. The circuit court also rejected Jones' argument that Gemini was not entitled to summary judgment because it had failed to show that the vehicle was disposed of in a commercially reasonable manner, as required by Wis. Stat. § 425.209(1). The court reasoned further proceedings were not necessary on that issue because Jones had never alleged or presented any evidence to indicate that the sale of the vehicle was not commercially reasonable. Stated differently, the court concluded Jones had failed to show the existence of a genuine issue of material fact regarding the reasonableness of the sale.

¶ 10. Finally, the circuit court concluded there was no "issue" regarding the statute of limitations. The court explained, "[T]he deficiency became due in mid 2009 and [Gemini] began this action in early 2015 under the six-year statute of limitations, so that does not forego or prohibit the action."

¶ 11. Jones now appeals, arguing the circuit court erred by granting Gemini summary judgment.

## STANDARD OF REVIEW

¶ 12. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. "Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented." *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If so, we then examine the

moving party's submissions to determine whether they establish a prima facie case for summary judgment. *Id.* If the moving party has made a prima facie showing, we examine the opposing party's affidavits to determine whether a genuine issue exists as to any material fact. *Id.*

¶ 13. In this case, it is undisputed that Gemini's complaint stated a claim for a deficiency judgment, and that Jones' answer raised several material factual issues. The parties' arguments instead pertain to whether Gemini made a prima facie case for summary judgment and, if so, whether Jones established the existence of a genuine issue of material fact. *See id.*

## DISCUSSION

### I. Ownership of the debt

¶ 14. Jones first argues the circuit court erred by granting Gemini summary judgment because Gemini failed to make a prima facie showing that "it is the real party in interest[,] as it lacks standing to seek a deficiency judgment against [Jones]." The parties appear to agree that, under either a standing analysis or a real-party-in-interest analysis, the critical question is whether Gemini presented sufficient evidence to make a prima facie showing that it owns Jones' debt.[2]

¶ 15. Gemini argues the documents attached to Neustadt's affidavit establish its ownership of the

---

[2] *See Wells Fargo Bank, N.A. v. Alexander,* No. 2012AP2236, unpublished slip op. ¶ 13 (WI App Aug. 15, 2013) (explaining the difference between "standing" and "real party in interest" and noting that, although they are distinct legal concepts, both are "used to designate a plaintiff who possesses a sufficient interest in the action to entitle him [or her] to be heard on the merits" (quoted source omitted)).

621

debt.[3] Gemini contends these documents show the "step-by-step process" by which the debt was transferred from Timber Ford Mercury to HSBC, from HSBC to Santander, from Santander to Main Street, and, finally, from Main Street to Gemini. We conclude, however, that the documents attached to Neustadt's affidavit are insufficient to establish Gemini's ownership. With the exception of the initial assignment from Timber Ford Mercury to HSBC,[4] none of the documents attached to Neustadt's affidavit specifically reference Jones' debt.

---

[3] Gemini spends a considerable portion of its respondent's brief on appeal arguing that the assignment documents attached to Neustadt's affidavit are admissible, either because: (1) they fall under the hearsay exception for records of regularly conducted activity, *see* WIS. STAT. § 908.03(6) and *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶ 11, 324 Wis. 2d 180, 781 N.W.2d 503; or (2) they are not hearsay, pursuant to *Bank of America NA v. Neis*, 2013 WI App 89, ¶ 49, 349 Wis. 2d 461, 835 N.W.2d 527, and *Lyon Financial Services, Inc. v. Dr. Manelle Fernando Medical Clinic, Inc.*, No. 2011AP222, unpublished slip op. ¶ 19 (WI App Nov. 10, 2011). However, Jones does not argue the documents Gemini offered to show its ownership of the debt are inadmissible. Rather, Jones argues those documents fail to make a prima facie showing that Gemini owns the debt. We therefore assume, without deciding, that the documents are admissible, and we limit our analysis to whether the documents are sufficient to establish a prima facie case regarding Gemini's ownership of the debt.

[4] A copy of the Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement between Jones and Timber Ford Mercury was attached to Neustadt's affidavit. Gemini contends this document "shows the assignment of the contract to HSBC." However, the copy of the document in the record is of such poor quality that the section entitled "Assignment" is illegible. The same is true of the copy included in the appendix to Jones' brief. Nevertheless, Jones conceded in the circuit court that HSBC "provided the financing" for the purchase of the vehicle. Consistent with that concession, and absent any appellate argument to the contrary by Jones, we

¶ 16. As the basis for his averment that ownership of Jones' debt was transferred from HSBC to Santander on or about November 9, 2009, Neustadt referenced a November 2, 2010 document entitled "Santander Consumer USA Inc. Secretary's Certificate," which was attached to his affidavit. In that document, Santander's "chief legal officer and secretary" certified that, pursuant to an "Asset Purchase Agreement" and "Servicing Agreement" dated November 9, 2009, Santander was "the assignee/servicer of [HSBC's] auto loan portfolio." However, nothing in the November 2, 2010 certificate specifically indicates that Jones' loan was part of that portfolio. Neither the "Asset Purchase Agreement" nor the "Servicing Agreement" referred to in the certificate was attached to Neustadt's affidavit.

¶ 17. Neustadt also averred that, on or about September 7, 2012, Santander "sold the contract and the rights therein to Main Street Acquisition Corp." In support of that averment, Neustadt cited an attached document entitled "Bill of Sale and Assignment," which stated that, pursuant to the terms and conditions of a "Purchase & Sale Agreement" dated September 7, 2012, Santander assigned to Main Street "all rights, title and interest . . . in and to those certain receivables, judgments or evidences of debt described in the 'Purchase and Sale Agreement' and 'Data File' attached hereto and made part hereof for all purposes."[5] The "Bill of Sale and Assignment" indicated

---

assume the Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement shows that Jones' loan was assigned from Timber Ford Mercury to HSBC.

[5] As one treatise explains:

In the typical debt buyer case, the actual assignment of ownership will be accomplished by the creation of three separate

Santander had assigned 153,062 "accounts" to Main Street, but it did not specifically reference any individual accounts or debts. Neither the "Purchase and Sale Agreement" nor the "Data File" referenced in the "Bill of Sale and Assignment" was attached to Neustadt's affidavit.

¶ 18. Finally, Neustadt relied on a "Bill of Sale and Assignment," dated July 16, 2014, in support of his averment that Main Street "sold the contract and the rights therein" to Gemini. The July 16, 2014 "Bill of Sale and Assignment" states that, pursuant to a "Purchase and Sale Agreement" of the same date, Main Street transferred and assigned to Gemini all of Main Street's "rights, title and interest in and to the Accounts and any claims arising out of the Accounts described in the Agreement and contained in the electronic file provided to [Gemini] on even date herewith." Once again, this "Bill of Sale and Assignment" did not reference any individual accounts or debts, and neither the "Purchase and Sale Agreement" nor any electronic file listing specific accounts or debts was attached to Neustadt's affidavit.[6]

---

documents. First is a signed "forward flow" agreement, that is a lengthy document that will set out the terms of sale of debt in general between the creditor and debt buyer. When a particular portfolio of debt (typically thousands of accounts) are sold between those parties, the parties execute a bill or [sic] sale or other short assignment document. That document will reference the portfolio and the forward flow agreement for the terms of the sale. That short assignment document will be accompanied by a "sale data file" or "final data file" which is an electronic spreadsheet that lists the specific consumer accounts being transferred, which will typically be numbered in the thousands.

JONATHAN SHELDON ET AL., COLLECTION ACTIONS: DEFENDING CONSUMERS AND THEIR ASSETS § 4.3.4.2.1 (3d ed. 2014).

[6] In response to Gemini's summary judgment motion, Jones' attorney submitted an affidavit, attached to which were

¶ 19. We believe it is self-evident that, in order to make a prima facie showing that it is the owner of Jones' debt, Gemini must present evidence indicating that it owns *that specific debt.* Gemini must present evidence showing that *Jones' specific debt* was transferred from HSBC to Santander, from Santander to Main Street, and finally from Main Street to Gemini. Merely demonstrating that multiple, unspecified debts or accounts were transferred between these entities is insufficient to make a prima facie showing that Gemini currently owns Jones' debt, such that it is the real party in interest and has standing to obtain a deficiency judgment against Jones. Cases from several other jurisdictions support this conclusion. *See In re Kendall*, 380 B.R. 37, 46 (Bankr. N.D. Okla. 2007); *Hutto v. CACV of Colo. , LLC*, 707 S.E.2d 872, 875 (Ga. Ct. App. 2011); *Arrow Fin. Servs., LLC v. Guiliani*, 32 A.3d 1055, 1058 (Me. 2011); *Premier Capital, L LC v. Baker*, 972 N.E.2d 1125, 1134 (Ohio Ct. App. 2012); *Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 33–34 (Tex. App. 2015); *see also* JONATHAN SHELDON ET AL., COLLECTION ACTIONS: DEFENDING CONSUMERS AND

several pages, each of which appears to contain a single line from a spreadsheet. Jones' attorney described these pages as "a true and accurate copy of a spreadsheet provided by [Gemini] to [Jones]." The spreadsheet pages refer to Jones by name, list the "original product" as "HSBC Serv Auto Loan," and list the "seller" as "Main Street Acquisition Corp." However, aside from Jones' attorney's averment that Jones received the spreadsheet pages from Gemini, there is nothing in the record to indicate which company prepared the spreadsheet or the reason for which it was prepared. There is no evidence indicating that this spreadsheet is the "electronic file" referenced in the July 16, 2014 "Bill of Sale and Assignment" from Main Street to Gemini.

THEIR ASSETS § 4.3.4.2.2 (3d ed. 2014) (stating a "debt buyer's documentation of an assignment must reference the specific account at issue" and collecting cases in support of that proposition).

¶ 20. Gemini asserts a recent Georgia Court of Appeals case "held that the type of affidavit relied on by Gemini [in the instant case] was sufficient to prove it was the real party in interest." *See Rutledge v. Gemini Capital Grp., LLC*, 757 S.E.2d 893 (Ga. Ct. App. 2014). In *Rutledge*, however, each "Bill of Sale" memorializing the transfer of multiple accounts from one entity to another was accompanied by "a single-line-item attachment" that "listed [the debtor's] personal information, account balance, and the last four digits of his account number." *Id.* at 894. Gemini did not submit any similar evidence in this case indicating that *Jones' specific debt* was transferred from HSBC to Santander, from Santander to Main Street, and from Main Street to Gemini. *Rutledge* is therefore distinguishable.

¶ 21. Gemini argues that, even if the documents attached to Neustadt's affidavit are insufficient to make a prima facie showing that Gemini owns Jones' debt, Neustadt's averments alone are sufficient to make that showing. As discussed above, Neustadt averred that HSBC transferred Jones' debt to Santander on or about November 9, 2009, that Santander "sold the contract and the rights therein" to Main Street on or about September 7, 2012, and that Main Street "sold the contract and the rights therein" to Gemini on or about July 16, 2014. Gemini asserts these averments establish that Jones' debt "was assigned various times until finally being assigned to Gemini."

██

¶ 22. We do not agree that Neustadt's averments, standing alone, establish a prima facie showing

that Gemini owns Jones' debt. Affidavits in support of summary judgment "shall be made on personal knowledge." Wis. Stat. § 802.08(3). Affidavits "made by persons who do not have personal knowledge" are insufficient to support summary judgment "and will be disregarded." *Leszczynski v. Surges*, 30 Wis. 2d 534, 538, 141 N.W.2d 261 (1966).

¶ 23. Neustadt averred in the first paragraph of his affidavit that he had "personal knowledge of the facts stated herein." He subsequently averred that he is a custodian of records for Gemini, and that the "facts recited herein are based upon [his] personal knowledge of the electronic business records of the account in question, which are part of [Gemini's] regular business records." However, despite these averments, nothing in Neustadt's affidavit reasonably implies that Neustadt, as a records custodian for Gemini, would have had personal knowledge of the prior assignments of Jones' debt from HSBC to Santander and from Santander to Main Street based on any source other than the documents attached to his affidavit. We have already concluded those documents are insufficient to make a prima facie showing that Jones' debt, specifically, was transferred between the listed entities. Because the documents themselves are insufficient to make a prima facie showing that Gemini owns the debt, Neustadt's averments based on those documents are also insufficient.

¶ 24. Our decision in *Palisades Collection LLC v. Kalal*, 2010 WI App 38, 324 Wis. 2d 180, 781 N.W.2d 503, is instructive on this point. The primary issue in *Palisades* was whether account statements attached to the affidavit of a Palisades employee were admissible under the hearsay exception for records of regularly conducted activity. *Id.*, ¶ 1; *see also* Wis. Stat.

627

§ 908.03(6). We concluded the account statements were inadmissible because the affidavit "present[ed] no facts that show[ed] [the affiant] ha[d] personal knowledge of how the account statements were prepared and whether they were prepared in the ordinary course of [the original creditor's] business." *Palisades*, 324 Wis. 2d 180, ¶ 23. We then stated:

> Because the affidavit does not set forth facts that would make the account statements admissible in evidence, the averment in the affidavit on the balance due is not admissible. Nothing in the affidavit shows that [the affiant] has personal knowledge of the amount owed if the account statements are inadmissible to prove the amount.

*Id.* Similarly, in this case, there is nothing in Neustadt's affidavit to show that, without the attached documents, Neustadt would have personal knowledge that Jones' debt was transferred from HSBC to Santander and from Santander to Main Street. Simply declaring he has personal knowledge of these events does not make it so. In other words, nothing in the affidavit "reasonably implies" that Neustadt would have any personal knowledge regarding those transfers absent the documents attached to his affidavit. *See id.*, ¶ 24.

¶ 25. Because neither the averments in Neustadt's affidavit nor the attached documents establish a prima facie showing that Gemini owns Jones' debt, the circuit court erred by granting Gemini summary judgment. We therefore reverse and remand for further proceedings. Although our reversal based on Jones' first argument technically makes it unnecessary for us to address his remaining arguments, *see Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716, we choose to address those arguments

in the interest of judicial efficiency because they are likely to arise again on remand, *see State v. Temby*, 108 Wis. 2d 521, 527, 322 N.W.2d 522 (Ct. App. 1982).

## II. WISCONSIN STAT. § 425.209(1)

¶ 26. Jones' second argument on appeal is that the circuit court erred by granting Gemini summary judgment because Gemini failed to establish that Jones' vehicle was sold in a commercially reasonable manner, as required by WIS. STAT. § 425.209(1).

¶ 27. As a threshold matter, we observe that Gemini argues Jones forfeited this argument by raising it for the first time during the hearing on Gemini's summary judgment motion. Gemini apparently believes that, in order to preserve this argument for appeal, Jones was required to raise it in his brief in opposition to Gemini's motion. However, the single, unpublished case Gemini cites in support of that proposition simply restates the well-established principle that a party forfeits its right to raise an argument on appeal by failing to first raise that argument in the circuit court. *See Peterson v. Stevens*, No. 2013AP709, unpublished slip op. ¶ 16 (WI App Oct. 24, 2013) (citing *Shadley v. Lloyds of London*, 2009 WI App 165, ¶ 25, 322 Wis. 2d 189, 776 N.W.2d 838). The record here indisputably shows that Jones raised his argument regarding WIS. STAT. § 425.209(1) in the circuit court. Although Gemini noted during the summary judgment hearing that Jones had not raised § 425.209(1) in his brief, Gemini did not argue Jones had forfeited that argument and did not request additional time to brief and address the issue. Gemini cites no authority supporting its assertion that raising an

argument during a motion hearing in the circuit court is insufficient to preserve that argument for appeal. We therefore reject Gemini's forfeiture argument.

■

¶ 28. Turning to the merits, WIS. STAT. § 425.209(1) provides:

> This section applies to a deficiency on a consumer credit sale of goods or services and on a consumer loan in which the lender is subject to defenses arising from sales (s. 422.408); *a customer is not liable for a deficiency unless the merchant has disposed of the goods in good faith and in a commercially reasonable manner.* [7]

(Emphasis added.) This court has previously held that a merchant's "failure to dispose of the goods as required under [§ 425.209(1)]" is not an affirmative defense that must be raised and proved by the customer. *See Shoeder's Auto Center, Inc. v. Teschner*, 166 Wis. 2d 198, 200, 479 N.W.2d 203 (Ct. App. 1991). Rather, "it is the merchant's duty to prove as part of its prima facie case that it disposed of the goods in a commercially reasonable manner before it is entitled to recover a deficiency judgment." *Id.*

■

¶ 29. Jones asserts Gemini "has not provided any evidence . . . that would prove the vehicle for which it seeks a deficiency judgment has been sold in a commercially reasonable manner." Gemini does not dispute this assertion.[8] Instead, Gemini argues it was merely required, under *Shoeder's Auto Center*, to prove

---

[7] It is undisputed that WIS. STAT. § 425.209(1) applies to this lawsuit.

[8] Gemini notes on appeal that Jones' vehicle was sold for $5,400. Gemini does not, however, develop any argument that the sale of the vehicle was "commercially reasonable."

as part of its prima facie case that Jones' vehicle was sold before Gemini filed suit. We disagree. Although the court in *Shoeder's Auto Center* initially framed the issue on appeal as whether, "under sec. 425.209(1), a merchant must dispose of the goods before it is entitled to recover a deficiency judgment," *Shoeder's Auto Center*, 166 Wis. 2d at 199, in resolving that issue the court ultimately concluded "it is the merchant's duty to prove as part of its prima facie case that it disposed of the goods in a commercially reasonable manner before it is entitled to a deficiency judgment," *id.* at 200. Consistent with *Shoeder's Auto Center*, we conclude that, in order to make a prima facie case for summary judgment, Gemini was required to present evidence demonstrating that Jones' vehicle was disposed of in a commercially reasonable manner. Because it is undisputed Gemini failed to present any evidence on that issue, we agree with Jones that the circuit court erred by granting Gemini summary judgment.[9]

## III. Statute of limitations

¶ 30. Finally, Jones argues the circuit court erred by granting Gemini summary judgment because a disputed issue of material fact exists regarding whether Gemini's complaint was timely filed. The

---

[9] Jones appears to assert that, if he prevails on appeal with respect to his argument regarding Wis. Stat. § 425.209(1), he is entitled to the remedies set forth in Wis. Stat. § 425.305. However, the issue of remedies is premature. We merely conclude in this opinion that Gemini failed to demonstrate as part of its prima facie case for summary judgment that Jones' vehicle was disposed of in a commercially reasonable manner. On remand, further proceedings will be necessary to determine whether the sale of the vehicle was, in fact, commercially reasonable.

parties agree the applicable statute of limitations is Wis. Stat. § 893.43(1), which provides that an "action upon any contract, obligation, or liability . . . shall be commenced within 6 years after the cause of action accrues or be barred." The parties further agree that "[a] partial payment on the contractual obligation made before the statute of limitations has run tolls the statute and sets it running from the date of payment." *See Liberty Credit Servs., Inc. v. Quinn*, 2004 WI App 202, ¶ 6, 276 Wis. 2d 826, 688 N.W.2d 768. The disputed issue is whether the evidence shows that a partial payment was made on Jones' debt within six years before Gemini filed this lawsuit—that is, at any time after March 23, 2009.

¶ 31. In opposition to Gemini's summary judgment motion, Jones filed affidavits averring that he "did not make a payment for the truck in question in 2009." In support of that averment, Jones submitted his banking records from January 1, 2009, through June 30, 2009. Jones contends these records show that he did not make any payment toward the debt during that time period.

¶ 32. Gemini, however, asserts a partial payment was made toward Jones' debt on July 29, 2009. Gemini relies on an account statement from Santander, dated August 17, 2015, which shows a July 29, 2009 payment of $249.90. The account statement provides two descriptors regarding that payment: "User allocated payment" and "Gap Insurance Cancellation/Refund."[10]

---

[10] In addition to the August 17, 2015 account statement, Gemini relies, in part, on Neustadt's averment that "[t]he last payment made by or on behalf of [Jones] occurred on July 29, 2009, in the amount of $249.90." However, Neustadt's affidavit does not indicate that averment is based on anything other than the attached account statement. We therefore focus our

¶ 33. Jones asserts the July 29, 2009 payment shown on the August 17, 2015 account statement was likely an insurance refund and was not a payment made by Jones himself. However, citing *St. Mary's Hospital Medical Center v. Tarkenton*, 103 Wis. 2d 422, 427, 309 N.W.2d 14 (Ct. App. 1981), Gemini asserts that the six-year statute of limitations for a contract claim is tolled "based on a payment made by someone other than a debtor if made on behalf of the debtor." Gemini contends:

> Here, [Jones'] testimony that [he] did not personally make a payment in 2009 failed to raise a genuine dispute as [he] did not also testify that [he has] personal knowledge that no one else made a payment on [his] behalf. In fact, [Jones'] brief admits there was a July 29, 2009 payment by someone else that was credited towards the loan, likely associated with insurance. Under *St. Mary's*, the payment from the insurance company tolled the statute of limitations.

¶ 34. *St. Mary's* involved a hospital's attempt to collect unpaid medical bills from Tarkenton, a former patient. *Id.* at 423–24. At the time of his hospitalization, Tarkenton was insured against some hospitalization costs under a policy issued by Republic National Life Insurance Company. *Id.* at 423. On July 18, 1972, Tarkenton "authorized Republic to pay the benefits due him under that policy to St. Mary's." *Id.* Republic subsequently made nine payments to St. Mary's, the last of which occurred on October 31, 1972. *Id.* Just under six years later, on October 24, 1978, St. Mary's sued Tarkenton seeking to recover the remainder of his unpaid medical bills. *Id.*

---

analysis on whether the account statement shows that a partial payment was made on July 29, 2009.

¶ 35. On appeal, we concluded Republic's October 31, 1972 payment to St. Mary's qualified as a partial payment on Tarkenton's debt and therefore tolled the six-year statute of limitations on St. Mary's claim. *Id.* at 427. We noted that, in order for a partial payment to "operate as a new promise and avoid the bar of the statute of limitations," it must "be made under such circumstances as to warrant a clear inference that the debtor recognized the debt as an existing liability, and indicated his [or her] willingness, or at least an obligation, to pay the balance." *Id.* at 426 (quoting *Davison v. Hocking*, 3 Wis. 2d 79, 86, 87 N.W.2d 811 (1958)). We reasoned that, in Tarkenton's case, the undisputed facts showed Tarkenton "recognized his obligation to pay St. Mary's and consented to the manner in which that obligation was partially paid"—i.e., through Republic's direct payment of Tarkenton's insurance benefits to St. Mary's. *Id.* at 427.

¶ 36. In this case, the record indicates that some type of insurance payment was applied to Jones' debt on July 29, 2009. However, unlike in *St. Mary's*, there is no evidence here that Jones authorized any insurer to make payments toward the debt on his behalf. The record contains no evidence regarding who purchased the insurance policy under which the July 29, 2009 payment was made, or what terms that policy contained regarding how or under what circumstances the insurer would make refund payments. If Jones did not purchase the policy or someone did not purchase it on his behalf with Jones' knowledge and agreement, it is difficult to comprehend how any refund payment to a creditor under the policy could be said to have been made with Jones' consent. If Jones did take out the

policy, one would expect that any refund would have been paid directly to Jones. If the policy instead required that any refund be paid to a creditor, an argument could be made that Jones consented to that procedure by accepting the policy's terms. Under those circumstances, a refund made to a creditor under the policy might be sufficient to trigger the partial payment doctrine. Here, though, there is no evidence that the policy under which the July 29, 2009 payment was made contained such a requirement.

¶ 37. Under these circumstances, we conclude there is a genuine issue of material fact as to whether Jones consented to the July 29, 2009 payment being made on his behalf, such that the payment triggered operation of the partial payment doctrine and therefore tolled the statute of limitations. Accordingly, the circuit court erred by concluding, as a matter of law, that Gemini's claim against Jones was timely filed.

*By the Court.*—Order reversed and cause remanded for further proceedings.