**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 11, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP1495**
**2023AP1496**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2022TP1
2022TP2

**IN COURT OF APPEALS
DISTRICT IV**

---

NO. 2023AP1495

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E.A.,
A PERSON UNDER THE AGE OF 18:

JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

I. J. R.,

RESPONDENT-APPELLANT.

---

NO. 2023AP1496

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.L.A.,
A PERSON UNDER THE AGE OF 18:

JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

**V.**

**I. J. R.,**

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Jackson County: ANNA L. BECKER, Judge. *Affirmed*.

¶1    KLOPPENBURG, P.J.[1]    This is a consolidated appeal of circuit court orders that terminated I.J.R.'s parental rights to her two biological children.[2] I.J.R. argues that the circuit court erred by denying her request for a continuance of a summary judgment hearing to permit her to appear at the hearing in person. I.J.R. also argues that the court erred by granting partial summary judgment in favor of petitioner Jackson County Department of Human Services (the Department) in the grounds phase of the proceedings. Finally, I.J.R. argues that her trial counsel was ineffective for failing to support her summary judgment response with an affidavit executed by I.J.R. I reject I.J.R.'s arguments and affirm.

## BACKGROUND

¶2    The following facts are undisputed for the purposes of this appeal. I.J.R. is the biological mother of two children: D.L.A., born in August 2017, and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] These appeals were consolidated for briefing and disposition by an order dated September 6, 2023, pursuant to WIS. STAT. RULE 809.10(3).

E.A., born in May 2019. I.J.R. has substance abuse issues that have affected her ability to care for her children. The father of both children was M.A., who died in 2020.

¶3 In 2018, the Department initiated child in need of protection or services (CHIPS) proceedings on behalf of D.L.A. related to an incident in which I.J.R. was stopped by police while driving under the influence of methamphetamine with D.L.A. in the vehicle. In January 2019, D.L.A. was placed in the care of M.A. by dispositional order in the CHIPS case. After E.A. was born in May 2019, the Department initiated CHIPS proceedings on behalf of E.A., who was ultimately also placed in the care of M.A. by dispositional order.

¶4 According to the Department, I.J.R. did not make progress toward overcoming her substance abuse issues, and she often refused to submit to drug testing and was under the influence of substances during visits with the children.

¶5 After M.A. died in 2020, the circuit court in the CHIPS proceedings placed both children in the care of one of M.A.'s relatives.

¶6 In June 2021, I.J.R. was incarcerated. While incarcerated, she had video visits with the children. On October 4, 2021, I.J.R. was released from incarceration and her whereabouts became unknown to the Department. On December 7, 2021, the circuit court issued revised dispositional orders in the two CHIPS cases suspending I.J.R.'s visits with the children until she met certain conditions, including commencing substance abuse counseling. I.J.R. did not appear at the hearing during which these orders were issued.

3

¶7      On February 14, 2022, I.J.R. was incarcerated again. During the period in which I.J.R. was out of custody prior to that date, she did not visit with the children.

¶8      In April 2022, the Department filed petitions seeking to terminate I.J.R.'s parental rights to both children. Involuntary termination of parental rights ("TPR") cases follow a "two-part statutory procedure." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. "In the first, or 'grounds' phase," the petitioner must prove that "one or more of the statutorily enumerated grounds for termination of parental rights exist." *Id.*; WIS. STAT. § 48.415. If so, the circuit court then proceeds to the second, or "dispositional" phase, in which it decides whether it is in the best interests of the child that the parent's rights be terminated. *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

¶9      The Department moved for partial summary judgment in the grounds phase of the TPR cases, arguing that there was no dispute that grounds for termination existed based on abandonment under WIS. STAT. § 48.415(1)(a)2. and on failure to assume parental responsibility under § 48.415(6). I.J.R.'s responsive materials opposing the summary judgment motion included witness deposition testimony transcripts, but did not include an affidavit executed by I.J.R.

¶10     At a status conference in September 2022, the circuit court set a summary judgment hearing date. I.J.R. indicated that she wished to appear at that hearing in person. At the ensuing hearing in November 2022, I.J.R. appeared by video rather than in person because she was incarcerated and no writ for her release had been filed. Trial counsel asked the court for a "short adjournment" to permit I.J.R. to appear in person, contending that summary judgment was an "important decision." The court denied the request, and the parties presented oral

argument on the Department's summary judgment motion. At a subsequent hearing, the court granted partial summary judgment to the Department on both the abandonment and the failure to assume parental responsibility grounds for termination.

¶11 The circuit court proceeded to hold a dispositional hearing, at which it determined that termination of I.J.R.'s parental rights was in the children's best interests and terminated I.J.R.'s parental rights to both children.

¶12 I.J.R. moved for postdisposition relief, arguing, among other things, that her trial counsel was ineffective for failing to file an affidavit executed by I.J.R. in opposition to the Department's motion for summary judgment.[3] After an evidentiary hearing, the circuit court denied I.J.R.'s postdisposition motion.

## DISCUSSION

¶13 I.J.R. argues that the circuit court erred in three ways: by denying her request for a continuance of the summary judgment hearing so that she could appear in person, by granting the Department's motion for partial summary judgment, and by denying her motion for postdisposition relief on ineffective assistance of counsel grounds.

---

[3] I.J.R. also argued in her postdisposition motion that her trial counsel was ineffective for failing to move to dismiss the TPR petitions on untimely service grounds. The circuit court rejected this argument, and I.J.R. does not renew it on appeal. Accordingly, I address it no further.

## I.     In-Person Appearance

¶14     As noted above, the circuit court denied I.J.R.'s request for a continuance when, because no writ for her release from custody was filed, she was unable to attend the November 2022 summary judgment hearing in person and instead appeared by video.  According to I.J.R., the reason that no writ was filed is because the Department disobeyed an order to file a writ, and the circuit court violated I.J.R.'s due process rights by denying her request for a continuance under the circumstances.  I.J.R. argues that she had a due process right to appear in person at the summary judgment hearing under the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which considers the private interest affected by the challenged procedure, the risk of erroneous deprivation of that interest by the challenged procedure, and the countervailing government interest supporting the use of the challenged procedure.  *See Mathews*, 424 U.S. at 335; *see also Santosky v. Kramer*, 455 U.S. 745, 754 (1982).  I.J.R. also argues that she had a right to appear in person under WIS. STAT. § 885.60, which governs the use of videoconferencing technology in certain proceedings, and that, alternatively, the court erroneously exercised its discretion by permitting her appearance by video without considering the factors set forth in WIS. STAT. § 885.56, which sets forth general criteria to guide a court's decision whether to permit the use of videoconferencing technology.

¶15     I.J.R.'s arguments fail for multiple independent reasons.  First, I.J.R.'s arguments depend at least in part on a premise without clear record support.  As noted above, I.J.R. contends that the Department disobeyed a court order to file a writ for I.J.R.'s release.  However, it is not clear from the record that the Department disobeyed any court order.  When I.J.R. asked to appear in person at the summary judgment hearing, her trial counsel represented that I.J.R. would

6

probably be in custody at a particular correctional institute on that date. The circuit court said, "[i]f we can confirm" I.J.R.'s custody status as of the hearing date, the Department's attorney should "do a writ" for I.J.R.'s release. To the extent that the court ordered the Department to file a writ, this order appears to be contingent on I.J.R.'s trial counsel following up with the Department to confirm I.J.R.'s custody status. I.J.R. fails to identify anything in the record showing whether her counsel did so; in fact, the record suggests that counsel did not, because counsel said at the subsequent summary judgment hearing that she made "the mistake of not following up" on the issue of the writ.

¶16     Setting aside the question of whether I.J.R.'s constitutional and statutory arguments have record support, they are forfeited because they are made for the first time on appeal, and I decline to overlook this forfeiture. Before the circuit court, I.J.R. made none of the constitutional or statutory arguments that she now makes on appeal. Rather, I.J.R. contended only that she should be permitted to appear in person because summary judgment was an "important decision," citing no legal authority. "Arguments raised for the first time on appeal are generally deemed forfeited." *Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810; *see also* *State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467 (to avoid forfeiture, "a party must raise an issue with sufficient prominence such that the [circuit] court understands that it is called upon to make a ruling"). More specifically, this court has stated that the arguments I.J.R. now advances may be forfeited if not preserved. *See State v. Klapps*, 2021 WI App 5, ¶29, 395 Wis. 2d 743, 954 N.W.2d 38 (forfeiture may apply to "a claimed structural constitutional violation"); *State v. Atwater*, 2021 WI App 16, ¶23, 396 Wis. 2d 535, 958 N.W.2d 533 (forfeiture may apply to a claimed violation of the videoconferencing rules set forth in WIS. STAT. ch. 885).

¶17 The forfeiture rule is meant to encourage diligence by attorneys and to ensure that "both parties and the circuit court" are given "notice of the issue and a fair opportunity to address the objection." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. I.J.R.'s cursory argument in support of her continuance request gave no notice to the circuit court or to the Department of the constitutional and statutory issues she now raises on appeal, and accordingly those issues were not addressed in the circuit court. Generally, this court does not "blindside [circuit] courts with reversals based on theories which did not originate in their forum." *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

¶18 Forfeiture is a rule of judicial administration, and this court has discretion to overlook forfeiture in appropriate cases. *See State v. Kaczmarski*, 2009 WI App 117, ¶9, 320 Wis. 2d 811, 772 N.W.2d 702. I.J.R. offers no reason why I should do so here. I.J.R. contends that her trial counsel was "surprised" by I.J.R.'s absence at the summary judgment hearing, perhaps suggesting that counsel learned that no writ had been filed too late to prepare an argument in favor of a continuance and cannot be faulted for any lack of diligence. However, trial counsel represented at the summary judgment hearing that she had learned "a couple days ago" that no writ had been filed. I.J.R. does not explain why a legal argument could not have been prepared in that time.

¶19 Having concluded that I.J.R.'s constitutional and statutory arguments fail on forfeiture grounds, I now address her argument that the circuit court erroneously exercised its discretion by denying her continuance request. "A circuit court properly exercises its discretion when it considers the relevant facts, applies the correct law, and articulates a reasonable basis for its decision." *National Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶12, 263 Wis. 2d 649, 665

N.W.2d 198. This court "will search the record for reasons to sustain the [circuit] court's exercise of discretion." *Lofthus v. Lofthus*, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393.

¶20 According to I.J.R., the circuit court erroneously exercised its discretion under WIS. STAT. § 885.56, which provides a list of factors that the circuit court "may consider" when determining "whether to permit the use of videoconferencing technology."[4] Sec. 885.56(1). While I.J.R. did not raise these statutory factors in the circuit court, I assume without deciding that § 885.56 applies and conclude that I.J.R. has not shown that the court erroneously exercised its discretion.[5] The circuit court articulated a reasonable basis for its decision, and, even though I.J.R. did not cite § 885.56, the court addressed factors listed in that statute.

¶21 For example, one of the factors considers whether the use of videoconferencing would "undermine the integrity, fairness, and effectiveness of the proceeding." WIS. STAT. § 885.56(1)(i). The circuit court said that I.J.R.'s physical presence was not crucial because the summary judgment hearing would involve no witness testimony and would instead be a "paper review" of the

---

[4] As noted above, I.J.R. also argues that she was entitled to be physically present under WIS. STAT. § 885.60(2)(a), which provides that a parent in a TPR proceeding "is entitled to be physically present in the courtroom at all trials and sentencing or dispositional hearings." Sec 885.60(2)(a). I.J.R. asserts that this statute applies because summary judgment "replaces a trial." Although I reject this statutory argument for other reasons explained in the text, I also reject it because I.J.R. fails to explain, with citation to supporting legal authority, her assertion that the reference in § 885.60(2)(a) to "all trials and sentencing or dispositional hearings" applies to summary judgment hearings.

[5] The Department argues that WIS. STAT. § 885.56 does not apply, and instead the circuit court's decision should be evaluated under WIS. STAT. § 807.13(1), which provides that "[t]he court may permit any oral argument by telephone" in civil proceedings. Because I assume without deciding that § 885.56 applies, I do not address this dispute.

parties' submissions; essentially, the court determined that, because the hearing involved only legal arguments, it could still be fair and effective if I.J.R. appeared by video. I.J.R. appears to challenge this determination, arguing that the circumstances "deterred attorney-client interaction" because I.J.R.'s only option for communicating with her attorney during the proceeding was "to bring the hearing to a halt by calling aloud or motioning her arms." However, these communication concerns were never brought to the court's attention, and I.J.R. cites nothing in the record to show that she had no other method of communicating with her attorney during the hearing. In any event, the fact that I.J.R. disagrees that the proceedings could be fair and effective without her physical presence does not mean that the court erroneously exercised its discretion.

¶22 Other factors listed in WIS. STAT. § 885.56 include "[t]he convenience of the parties" and "[a]ny other factors" that may be relevant. Sec. 885.56(1)(c), (L). The record shows that all parties were present and ready to proceed with the summary judgment hearing at the time that I.J.R. made her continuance request; accordingly, granting the request would have resulted in lost time and resources of the parties and the circuit court. Moreover, granting the continuance would have delayed the TPR proceedings, contrary to the strong policy interest in "timely decisions about the fitness of parents" in such cases. *Waukesha Cnty. v. Steven H.*, 2000 WI 28, ¶5, 233 Wis. 2d 344, 607 N.W.2d 607, *modified on other grounds by* *St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, 368 Wis. 2d 170, 880 N.W.2d 107.

¶23 In sum, I.J.R. fails to show that the circuit court erred by denying her request for a continuance to appear in person at the summary judgment hearing.

10

## II.    Summary Judgment

¶24    In TPR proceedings, partial summary judgment may be granted to resolve the grounds phase. *See Steven V.*, 271 Wis. 2d 1, ¶¶32, 44. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶25    An appellate court reviews the circuit court's grant of summary judgment de novo, applying the same methodology as the circuit court. *State v. Bobby G.*, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. In evaluating a motion for summary judgment, a court "examine[s] the moving party's submissions to determine whether they establish a prima facie case for summary judgment." *Gemini Cap. Grp., LLC v. Jones*, 2017 WI App 77, ¶12, 378 Wis. 2d 614, 904 N.W.2d 131. If so, the court then examines the opposing party's submissions "to determine whether a genuine issue exists as to any material fact." *Id.*

¶26    As a preliminary matter, I.J.R. notes that partial summary judgment is generally disfavored in TPR cases where, as here, the asserted grounds are fact intensive. *See Steven V.*, 271 Wis. 2d 1, ¶36 ("Summary judgment will ordinarily be inappropriate in TPR cases premised on … fact-intensive grounds" such as abandonment and failure to assume parental responsibility). However, our supreme court has stated that summary judgment on such grounds is not categorically inappropriate, and that the propriety of summary judgment is determined on a case-by-case basis under the applicable summary judgment

11

methodology.  *See Bobby G.*, 301 Wis. 2d 531, ¶40; *Steven V.*, 271 Wis. 2d 1, ¶37 n.4.

¶27    I.J.R. argues that the circuit court erroneously granted summary judgment to the Department on both the abandonment ground under WIS. STAT. § 48.415(1)(a)2. and the failure to assume parental responsibility ground under WIS. STAT. § 48.415(6).  Because I conclude that summary judgment on the abandonment ground was appropriate, I do not address the failure to assume parental responsibility ground.  *See Steven V.*, 271 Wis. 2d 1, ¶24 (only one statutory ground for termination need be proven); *Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶28    The ground of abandonment under WIS. STAT. § 48.415(1)(a)2. requires the Department to show that "the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by [WIS. STAT. §] 48.356(2) or [WIS. STAT. §] 938.356(2) and the parent has failed to visit or communicate with the child for a period of 3 months or longer." *See* § 48.415(1)(a)2.  "Abandonment is not established" if I.J.R. proves the affirmative defense of good cause.  *See* § 48.415(1)(c); *State v. James P.*, 2005 WI 80, ¶46, 281 Wis. 2d 685, 698 N.W.2d 95.  I.J.R. argues that there are genuine issues of material fact as to the Department's prima facie case and as to her good-cause defense.

*The Department's Prima Facie Case*

¶29    The Department alleges an abandonment period of approximately four and a half months, between October 4, 2021 (when I.J.R. was released from

incarceration) and February 14, 2022 (when I.J.R. was taken back into custody). According to the Department's affidavits in support of summary judgment and I.J.R.'s concessions during the summary judgment hearing, during that period, the children were placed outside of I.J.R.'s home by court orders containing the required statutory notices, and I.J.R. failed to visit or communicate with the children.[6]

¶30     I.J.R. argues that there is a genuine issue of material fact as to whether the Department has shown an abandonment period of three months or longer, pointing to WIS. STAT. § 48.415(1)(b). Under that statute, an abandonment period "shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child." Sec. 48.415(1)(b). As noted above, the December 7, 2021 dispositional orders in the CHIPS cases suspended I.J.R.'s visits until she met certain conditions, including commencing substance abuse counseling. I.J.R. contends that, under § 48.415(1)(b), the time while the December 7, 2021 orders were in effect cannot count toward the abandonment period, and so the Department cannot show an abandonment period of three months or longer between October 4, 2021, and February 14, 2022.

¶31     I.J.R.'s argument fails under *Carla B. v. Timothy N.*, 228 Wis. 2d 695, 705, 598 N.W.2d 924 (Ct. App. 1999), in which this court determined that the

___

[6] I.J.R. argues that there are factual disputes concerning a separate purported abandonment period between December 22, 2020, and June 9, 2021. I.J.R.'s arguments are in response to the circuit court's determination that an additional abandonment period occurred between those dates. The Department did not argue in support of this additional abandonment period before the court during summary judgment proceedings, nor does the Department do so on appeal. Because my review of a grant of summary judgment is de novo, I address only the abandonment period that the Department identifies on appeal.

13

limitation set forth in WIS. STAT. § 48.415(1)(b) does not apply if the court order "prohibits visitation but does not prohibit communication." I.J.R. acknowledges that her argument is in conflict with *Carla B.*, and she attempts to overcome that case in two ways.

¶32     First, I.J.R. contends that *Carla B.*'s interpretation of WIS. STAT. § 48.415(1)(b) is "contrary to the plain language of the statute." This argument is unavailing because this court is bound by its published precedents. *See In re Court of Appeals of Wis.*, 82 Wis. 2d 369, 371, 263 N.W.2d 149 (1978).

¶33     Second, I.J.R. contends that there is a factual dispute as to whether the December 7, 2021 orders prohibited not only visits, but also communication. I.J.R. argues that she believed that these orders barred her from "communicating with her children," and this belief "is reasonable given that a parent in [her] shoes would likely respond cautiously to it, fearing that a misstep would risk further repercussions."

¶34     This argument fails for at least the following reasons. First, I.J.R. cites nothing in the record to support her assertion that she believed that the orders barred both visits and communication. Setting aside this lack of record support, I.J.R.'s argument also fails because I.J.R.'s purported subjective interpretation of the orders is not legally significant. This court interprets court orders as it does "other written instruments." *Walt v. City of Brookfield*, 2015 WI App 3, ¶19, 359 Wis. 2d 541, 859 N.W.2d 115. The inquiry begins with the plain language of the order, and only considers extrinsic evidence if that language is ambiguous. *Id.* (citing *BV/B1, LLC v. InvestorsBank*, 2010 WI App 152, ¶25, 330 Wis. 2d 462, 792 N.W.2d 622). The December 7, 2021 orders state that "[v]isits between [I.J.R.] and her child shall be suspended" until certain conditions are met, and they

14

place no express restrictions on communication. I.J.R. contends that these orders are "reasonably susceptible to multiple meanings," but she fails to identify any language in the orders that could be reasonably construed to restrict communication.

¶35 In sum, I.J.R. fails to show that there is a genuine issue of material fact as to whether the Department proved a prima facie case of abandonment under WIS. STAT. § 48.415(1)(a)2.

*I.J.R.'s Good-Cause Defense*

¶36 I.J.R.'s affirmative defense of good cause requires her to show "all of the following": (1) that she had "good cause for having failed to visit" the children during the alleged abandonment period; (2) that she had "good cause for having failed to communicate with" the children during that period; and (3) if she proves good cause for failing to communicate with the children during that period, that she either communicated about the children with their foster custodian or the Department, or had good cause for failing to do so. WIS. STAT. § 48.415(1)(c).

¶37 I.J.R. bears the overall burden of proof on her good-cause defense, and so bears the initial burden to identify evidence in the summary judgment materials sufficient to support it. *See **Transportation Ins. Co. v. Hunzinger Const. Co.**,* 179 Wis. 2d 281, 290, 507 N.W.2d 136 (Ct. App. 1993) ("The ultimate burden … of demonstrating that there is sufficient evidence … to go to trial at all (in the case of a motion for summary judgment) is on the party that has the burden of proof on the issue that is the object of the motion.").

¶38 As to the first element, whether I.J.R. had good cause for failing to visit the children, I.J.R. fails to make any argument that she presented evidence

showing that there is a genuine dispute of material fact. Although, as discussed above, the December 7, 2021 orders suspended her visits with the children, I.J.R. does not argue that these orders—or any other evidence in the summary judgment materials—supports a defense that she had good cause for failing to visit the children.[7]

¶39 I.J.R. also fails to show that there is a genuine dispute of material fact as to the second element, whether I.J.R. had good cause for failing to communicate with the children. The children were two and four years old during the abandonment period. I.J.R. contends that whether they were "too young to meaningfully communicate with" her during the alleged abandonment period is a "debatable point that should have been submitted to a factfinder." But I.J.R. does not offer any argument in support of the premise that the children were too young to communicate with her meaningfully during the alleged abandonment period, nor does she support this undeveloped argument by reference to any specific evidence regarding either child's communication skills during that time.

¶40 Finally, I.J.R. fails to show that there is a genuine dispute of material fact as to the third element, whether she either communicated about the children with their foster custodian or the Department or had good cause for failing to do so. I.J.R. points to deposition testimony by I.J.R.'s social worker that I.J.R. "would ask questions about her children's health, doctor's visits, and schooling." However, the social worker's testimony was that she discussed these topics with

---

[7] In I.J.R.'s affidavit in support of her postdisposition motion, she avers that she was unaware of the December 7, 2021 orders, presumably because she failed to appear at the hearing during which these orders were issued. She does not rely on this averment to support her good-cause defense. Moreover, because I.J.R.'s postdisposition affidavit is not part of the summary judgment materials, I do not consider it in my review of the summary judgment motion.

I.J.R. "[w]hen meeting with [I.J.R.] at the jail." I.J.R. was out of custody during the alleged abandonment period. I.J.R. identifies no evidence that she communicated with the social worker "about the children" during the alleged abandonment period, nor does she identify any other evidence that would establish a fact question as to the third good-cause element.

¶41    In sum, I.J.R. fails to show that there is a genuine issue of material fact as to the good cause elements that she must prove. Accordingly, summary judgment in favor of the Department on the abandonment ground was appropriate.

### III.    Ineffective Assistance of Counsel

¶42    A parent in a TPR proceeding has the right to effective assistance of counsel. *Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. A parent's ineffective assistance of counsel claim is analyzed under the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Nicole W.*, 299 Wis. 2d 637, ¶33. Under that test, to establish ineffective assistance, a defendant must prove both "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To show prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

¶43    "A claim of ineffective assistance is reviewed under a mixed standard:  the circuit court's findings of facts will not be overturned unless clearly erroneous, but considerations of whether counsel provided deficient performance and whether the defendant suffered prejudice as a result are questions of law" reviewed de novo. *State v. Quigley*, 2016 WI App 53, ¶35, 370 Wis. 2d 702, 883 N.W.2d 139.

¶44    As noted above, I.J.R. argued in her motion for postdisposition relief that her trial counsel was ineffective for failing to support her summary judgment response with an affidavit executed by I.J.R.  She filed such an affidavit in support of her postdisposition motion.  Many of the averments in this affidavit relate to times other than the alleged abandonment period, and others are general and undated; for example, I.J.R. avers that she "had phone conversations with her children "during 2021 and 2022 … although I cannot recall the exact dates," and that "I tried many times to call" the social worker "to arrange services and visits" but "[s]ome of my calls were not returned."

¶45    At the hearing on I.J.R.'s postdisposition motion, I.J.R.'s trial counsel testified that she was "not sure" why she did not prepare an affidavit for I.J.R., but that she believed she "had really strong" deposition testimony from other witnesses, which she instead used as evidence to support I.J.R.'s summary judgment response.  Counsel testified that, in hindsight, she should have supported I.J.R.'s summary judgment response with an affidavit executed by I.J.R., and the lack of such an affidavit failed to give I.J.R. "a chance to have her words made part of the record."  When asked what specific facts were missing from the summary judgment response due to the lack of an affidavit from I.J.R., counsel testified that she was "not sure."

¶46    In the circuit court's oral ruling denying the postdisposition motion, the court determined that trial counsel did not perform deficiently by failing to file an affidavit executed by I.J.R., saying that counsel "put forth the same information" that an affidavit from I.J.R. would have included, but in the "different format" of deposition testimony from other witnesses.  The court also determined that I.J.R. was not prejudiced by any alleged deficiency, because the averments in I.J.R.'s postdisposition affidavit were "vague," did not raise any

18

genuine issue of material fact, and would not have helped I.J.R. to survive summary judgment.

¶47 On appeal, I.J.R. renews her arguments. I do not address whether trial counsel's performance was deficient, because I conclude that I.J.R. has failed to show prejudice.[8] *See **State v. Elm***, 201 Wis. 2d 452, 462, 549 N.W.2d 471 (Ct. App. 1996) ("If the defendant fails to adequately show one prong of the **Strickland** test, we need not address the second."). To show prejudice, I.J.R. must show that there is a reasonable probability that the circuit court would not have granted the summary judgment motion had trial counsel filed a responsive affidavit executed by I.J.R. I need not address I.J.R.'s arguments pertaining to the failure to assume parental responsibility ground because I.J.R. fails to prove that there is a reasonable probability that her affidavit would have helped her survive summary judgment on the abandonment ground.

¶48 In I.J.R.'s appellant's brief, she asserts that her "affidavit raises genuine factual issues," and proceeds to list many of the averments in her affidavit. However, I.J.R.'s brief fails to explain how any of these averments raise a genuine dispute as to any element of the Department's prima facie case for abandonment, or I.J.R.'s good-cause defense, as to the alleged abandonment period at issue. Moreover, it not immediately apparent how these averments might

---

[8] I nevertheless briefly address one of I.J.R.'s arguments as to deficiency. I.J.R. contends that whether I.J.R.'s trial counsel was deficient depends on whether "a reasonable probability exists that filing an affidavit would have defeated the motion." This argument conflates the two **Strickland** prongs. **Strickland v. Washington**, 466 U.S. 668 (1984). Demonstrating deficient performance does not depend on whether the performance resulted in prejudice; rather, it depends on whether "counsel's representation fell below an objective standard of reasonableness considering all the circumstances." **State v. Dalton**, 2018 WI 85, ¶34, 383 Wis. 2d 147, 914 N.W.2d 120.

have helped her survive summary judgment. For example, as noted above, I.J.R. avers that she had phone conversations with the children "during 2021 and 2022" although she "cannot recall the exact dates." But this is not evidence that I.J.R. communicated with the children during the alleged abandonment period of October 4, 2021, through February 14, 2022, particularly in light of I.J.R.'s concession during summary judgment oral arguments that she did not communicate with the children during that time.

¶49 In I.J.R.'s reply brief, she makes arguments to explain how her affidavit supports her good-cause defense. This court generally does not address arguments made for the first time in a reply brief, because the opposing party has no opportunity to respond. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Even had I.J.R.'s arguments been timely made, they fail to clarify how the averments in I.J.R.'s affidavit could raise a genuine issue of material fact. For example, I.J.R. contends that her averment that "some of her calls" to the social worker "were not returned" creates a genuine dispute regarding "whether good cause exists for her failure to visit with her children." However, I.J.R. fails to point to any evidence that I.J.R. made any unreturned calls to the social worker during the alleged abandonment period.

¶50 Because I.J.R. has failed to prove that she was prejudiced by trial counsel's allegedly deficient performance, I reject her ineffective assistance of counsel claim.

## CONCLUSION

¶51 For all of these reasons, I affirm the circuit court's orders terminating I.J.R.'s parental rights.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.